UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-23828-CIV-LENARD

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES ("AFGE") LOCAL 501 and
COUNCIL OF PRISON LOCALS, CPL 33,

    Plaintiffs,                                                      **CLASS ACTION**

v.

**JOSEPH R. BIDEN**, in his official capacity,
as President of the United States,
**MICHAEL CARVAJAL**, in his official capacity,
as the Director of the Federal Bureau of Prisons,
**EUGENE CARLTON**, in his official capacity,
as the Warden of the Miami Federal Detention Center,
**MERRICK GARLAND**, in his official capacity,
as Attorney General of the United States,
U.S. Department of Justice, Federal Bureau of Prisons,
**KIRAN AHUJA**, in her official capacity,
as Director of the Office of Personnel Management, and
as Co-chair of the Safer Federal Workforce Task Force, and
**JEFFREY ZIENTS**, in his official capacity,
as Co-chair of the Safer Federal Workforce Task Force and
COVID-19 Response Coordinator,

    Defendants.
_____/

## ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

**THIS CAUSE** is before the Court on Plaintiffs American Federation of Government Employees ("AFGE") Local 501 and Council of Prison Locals, CPL 33's Motion for the Issuance of a Preliminary Injunction, ("Motion," D.E. 19), filed November 12, 2021. The Government filed a Response on December 16, 2021, ("Response," D.E.

31), to which Plaintiffs filed a Reply on December 20, 2021, ("Reply," D.E. 32).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.  Introduction[1]

"The United States is currently facing a public health emergency as the result of a novel corona virus, which causes the disease COVID-19."[2]  COVID-19 "is an infectious disease caused by the SARS-CoV-2 virus."[3]  "COVID-19 is highly contagious and is transmitted mostly through respiratory droplets."[4]  The most common symptoms are fever, cough, tiredness, and loss of taste or smell, while more serious symptoms include difficulty breathing, loss of speech or mobility, and chest pain.[5]  "Anyone can get sick with COVID-19 and become seriously ill or die at any age."[6]

---

[1]  The information in this Section is included solely to provide context for Plaintiffs' claims and the issues before the Court.

[2]  Florida v. Dep't of Health & Human Servs., __ F.4th __, 2021 WL 5768796, at *1 (11th Cir. Dec. 6, 2021) (citing 86 Fed. Reg. at 65,519).

[3]  World Health Organization ("WHO"), Coronavirus disease (COVID-19) Overview, available at https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited Dec. 20, 2021).

[4]  Ranjan K. Mahapatra, et al., The recent challenges of highly contagious COVID-19, causing respiratory infections: Symptoms, diagnosis, transmission, possible vaccines, animal models, and immunotherapy, Chemical Biology & Drug Design, vol. 96(5) (Jul. 26, 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7405220/# (last visited Dec. 17, 2021).

[5]  WHO, Coronavirus disease (COVID-19) Symptoms, available at https://www.who.int/health-topics/coronavirus#tab=tab_3 (last visited Dec. 20, 2021).

[6]  WHO, Coronavirus disease (COVID-19) Overview, available at https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited Dec. 20, 2021).

COVID-19 "emerged in Wuhan, China, at the end of 2019. The virus rapidly spread across China and the rest of the world."[7] Since then, the virus has mutated into new variants which are more contagious than the original virus.[8, 9, 10]

To date, there have been 274,628,461 confirmed cases of COVID-19 worldwide, resulting in 5,358,978 deaths.[11] In the United States alone there have been 51,115,304 confirmed cases of COVID-19, resulting in 805,112 deaths.[12] "COVID-19 is the 'deadliest disease in American history.'"[13]

In response to the COVID-19 pandemic, pharmaceutical companies developed vaccines.[14] There are currently three vaccines that are approved or authorized in the United

---

[7] Yi-FanLin, et al., Spread and Impact of COVID-19 in China: A Systematic Review and Synthesis of Predictions From Transmission-Dynamic Models, Frontiers in Medicine (June 18, 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7314927/ (last visited Dec. 20, 2021).

[8] See WHO, Tracking SARS-CoV-2 variants, available at https://www.who.int/en/activities/tracking-SARS-CoV-2-variants/ (last visited Dec. 20, 2021).

[9] Centers for Disease Control ("CDC"), COVID-19, Delta Variant: What We Know About the Science (updated Aug. 26, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Dec. 21, 2021).

[10] CDC, COVID-19, Omicron Variant, (updated Dec. 20, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Dec. 21, 2021).

[11] WHO, Coronavirus disease (COVID-19) pandemic, available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited Dec. 22, 2021).

[12] CDC, COVID Data Tracker, available at https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited Dec. 22, 2021).

[13] Florida, __ F.4th __, 2021 WL 5768796, at *1 (quoting 86 Fed. Reg. at 65519).

[14] See generally CDC, Vaccines for COVID-19, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/index.html (last visited Dec. 20, 2021).

States to prevent COVID-19—those developed by (1) Pfizer-BioNTech ("Pfizer"), (2) Moderna, and (3) Johnson & Jonson's Janssen ("J&J").[15]  In clinical studies, the Pfizer vaccine was 95% effective at preventing COVID-19 in people ages 16 years and older;[16] the Moderna vaccine was 94.1% effective at preventing COVID-19 in people ages 18 years and older;[17] and the J&J vaccine was 66.3% effective at preventing COVID-19.[18]  All three vaccines are highly effective at preventing severe illness, hospitalizations, and death in people who do become infected with COVID-19 after receiving the vaccination.[19]

## II.     Background[20]

On September 9, 2021, the President of the United States, Defendant Joseph R. Biden, signed Executive Order No. 14043, 86 Fed. Reg. at 50989 (Sept. 9, 2021), titled

---

[15]   See CDC, Types of Vaccines Available, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html (last visited Dec. 20, 2021).

[16]   CDC, COVID-19, Vaccines, Pfizer-BioNTech, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited Dec. 20, 2021).

[17]   CDC, COVID-19, Vaccines, Moderna, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited Dec. 20, 2021).

[18]   CDC, COVID-19, Vaccines, Johnson & Johnson's Janssen, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last visited Dec. 20, 2021).

[19]   Id.; CDC, COVID-19, Vaccines, Pfizer-BioNTech, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited Dec. 20, 2021); CDC, COVID-19, Vaccines, Moderna, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html (last visited Dec. 20, 2021).

[20]   The following facts are gleaned from Plaintiffs' Amended Verified Complaint for a Preliminary Injunction.  (D.E. 18.)

"Requiring Coronavirus Disease 2019 Vaccination for Federal Employees[,]" ("Executive Order"). (Am. Compl. ¶ 29.) The Executive Order required that "each agency shall implement . . . a program to require COVID-19 vaccinations, for all of its federal employees." (Id. ¶ 30.) The Executive Order further required the Whitehouse Safer Workforce Task Force to issue guidance for agencies by September 16, 2021. (Id. ¶ 31.)

On September 16, 2021, the Whitehouse Safer Workforce Task Force updated the "Frequently Asked Questions" ("FAQs") section of its website. (Id. ¶ 32.) The FAQs state that exceptions to the vaccine requirement are to be made in "limited circumstances, where the law requires an exception." (Id. ¶ 32 n.3.)

On October 1, 2021, the Whitehouse Safer Workforce Task Force established a November 22, 2021 deadline for federal employees to be fully vaccinated.[21] (Id. ¶ 35.) "[F]ederal agencies are authorized to begin the disciplinary process for employees who refuse to comply[] with the vaccination mandate on November 9, 2021, since a period of two weeks[] are required[] from the second Moderna or Pfizer shot, and the single dose Johnson & Johnson vaccine for the vaccine to provide full protection." (Id.) The enforcement or disciplinary process begins with a five-day counseling period during which federal agencies must provide a non-compliant employee with information on the benefits of the vaccine and how to obtain the vaccine. (Id. ¶ 36.) Continued non-compliance during the suspension can be followed by a removal proposal, but unique operational needs of an agency and the circumstances affecting a particular employee may warrant departure from

---

[21] Plaintiffs assert that the vaccine deadline has been extended to January 4, 2022, (Am. Compl. at 2 n.1; Reply at 3), but Defendants disagree, (Resp. at 7 n.2).

this guidance, if necessary. (Id. ¶ 36.) If a federal employee does not comply with the requirement to become fully vaccinated and has not been provided with an exemption, an agency may pursue disciplinary action, up to and including removal from federal service. (Id. ¶ 41.) Additionally, the Whitehouse Safer Workforce Task Force has stated that new hires in the federal workforce must be required to prove that they are fully vaccinated before they report for their first day on the job. (Id. ¶ 42.) An agency may rescind a job offer if a new hire does not meet a requirement of a job announcement. (Id. ¶ 43.)

Plaintiff AFGE Local 501 is a duly authorized and constituted labor organization, operating as the exclusive bargaining representative for employees of the Federal Bureau of Prisons, an agency under the auspices of the United States Department of Justice. (Id. ¶ 15.) Plaintiff Council of Prison Locals, CPL 33 ("CPL 33") is the district office for local labor organizations representing bargaining unit employees of the Federal Bureau of Prisons. (Id. ¶ 16.) AFGE Local 501 is a constituent local union of CPL 33. (Id. ¶¶ 15-16.)

On October 30, 2021, Plaintiffs initiated this putative class action lawsuit challenging the federal employee vaccine requirement. (D.E. 1.)

On November 12, 2021, Plaintiffs filed the operative Amended Complaint for a Preliminary Injunction which asserts four causes of action:

Count I: Right to Privacy, Personal Autonomy and Personal Identity under the Fourteenth Amendment, 42 U.S.C. § 1983;

Count II: Violation of the Privacy Act, 5 U.S.C. § 552a(e);

Count III: Violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553; and

<blockquote>

Count IV: Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983.

</blockquote>

(D.E. 18.) The Defendants are Joseph R. Biden, in his official capacity as President of the United States of America, (id. ¶ 18); Michael Carvajal, in his official capacity as Director of the Federal Bureau of Prisons, (id. ¶ 19); Eugene Carlton, in his official capacity as the Warden of the Federal Detention Center in Miami, Florida, (id. ¶ 21); Merrick Garland, in his official capacity as Attorney General of the United States, (id. ¶ 22); Kiran Ahuja, in her official capacity as Director of the Office of Personnel Management, (id. ¶ 24); and Jeffrey Zients, in his official capacity as the Co-chair of the Safer Federal Workforce Task Force, (id. ¶ 25).[22] The Clerk issued summonses as to each Defendant and the acting United States Attorney for the Southern District of Florida, Juan Antonio Gonzalez. (D.E. 8, 12, 21.)

On November 12, 2021, Plaintiffs filed the instant Motion for the Issuance of a Preliminary Injunction. (D.E. 19.) The Motion does not contain a certificate of service or otherwise indicate that Defendants were served with a copy of the Motion.

On December 7, 2021, Plaintiffs filed a Motion to Expedite Proceedings. (D.E. 24.) Therein, they state that the federal employee vaccine mandate is scheduled to go into effect January 4, 2022 and "request that this matter be adjudicated prior to the current deadline

---

[22] The "Parties" section of the Amended Complaint also names the Federal Bureau of Prisons and the Office of Personnel Management as Defendants. (D.E. 18 ¶¶ 20, 25.) It also appears to name the United States Department of Justice as a Defendant. (See id. ¶ 27.) However, none of these entities are listed as Parties in the case caption, Plaintiffs did not file Proposed Summonses for these entities, (see D.E. 7 and exhibits attached thereto), and, therefore, the Clerk did not issue summonses as to these entities, (see D.E. 8, 21).

of January 4, 2022; and they further request that the Court order the Defendants to comply with an expedited briefing schedule." (Id at 2.) In a footnote, Plaintiffs assert that "[t]he parties to this action have been served with the Verified Amended Complaint (D.E. 18), as well as the Motion for a Preliminary Injunction[,] (D.E. 19)." (Id. at 2 n.1.) However, to that point, Plaintiffs had not filed proof of service, and neither the U.S. Attorney nor any of the Defendants had entered an appearance. (See D.E. 25.) Therefore, on December 8, 2021, the Court issued an Order Denying Without Prejudice Plaintiffs' Motion to Expedite Proceedings. (Id.)

On December 8, 2021, Plaintiffs filed an Amended Motion to Expedite Proceedings. (D.E. 26.) Plaintiffs attached to their Motion Returns of Service stating that each Defendant, except Director Ahuja, had been served with Summons in a Civil Action and Plaintiffs' Amended Verified Complaint for a Preliminary Injunction (and the Exhibits attached thereto). (D.E. 26-1 – 26-7.) The Returns of Service for Attorney General Garland, (D.E. 26-1), President Biden, (D.E. 26-2), and Co-Chair Zients, (D.E. 26-3) state that process was mailed to them via United States Postal Service Certified Mail on November 17, 2021; however, Plaintiffs did not attach a certificate verifying when (if at all) the process was delivered to these Defendants. The Return of Service for Warden Carlton states that process was mailed to him on December 2, 2021, but it does not include a certificate verifying when (if at all) the process was delivered to him. (D.E. 26-5.) The Return of Service for Director Carvajal states that he was served on December 1, 2021. (D.E. 26-6.) The Return of Service for U.S. Attorney Gonzalez states that process was served on November 16, 2021. (D.E. 26-7.) The Returns of Service do not state that any

Defendant or the U.S. Attorney was served with a copy of the Motion for the Issuance of a Preliminary Injunction**.**

On December 9, 2021, the Court entered a Paperless Order instructing Counsel for Plaintiffs to hand-deliver a copy of (1) Plaintiffs' Amended Verified Complaint for a Preliminary Injunction, (D.E. 18); (2) Plaintiffs' Motion for the Issuance of a Preliminary Injunction, (D.E. 19); and (3) Plaintiffs' Amended Motion to Expedite Proceedings, (D.E. 26), to the Executive Office of the U.S. Attorney for the Southern District of Florida, care of First Assistant U.S. Attorney Michelle Alvarez. (D.E. 27.) Counsel was further instructed to file a Certificate of Service on the docket after service had been completed. (Id.) On December 9, 2021, Counsel for Plaintiffs filed a Certificate of Compliance certifying "that the pertinent pleadings, referenced in the Court's Order of December 9, 2021 [D.E. 27], were hand delivered to Michelle Alvarez, on Thursday[,] December 9 2021, at 2:30 p.m." (D.E. 28.)

On December 13, 2021, the Court entered a Paperless Order granting Plaintiffs' Amended Motion to Expedite Proceedings, and setting an expedited briefing schedule. Thereafter, Defendants, through counsel, entered an appearance. (D.E. 30.)

On December 16, 2021, Defendants filed a Response. (D.E. 31.) On December 20, 2021, Plaintiffs filed a Reply. (D.E. 32.)

## II.     Legal Standard

"[A] district court may grant a preliminary injunction only if the movant establishes the following: '(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm

suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.'" N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 (11th Cir. 2008) (quoting Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246 (11th Cir. 2002)). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975)). "The first two factors are 'the most critical.'" Florida, __ F.4th __, 2021 WL 5768796, at *4 (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)). "Where the government is the party opposing the preliminary injunction, its interest and harm—the third and fourth elements—merge with the public interest." Id. (citing Swain v. Junior, 958 F.3d 1081, 1091 (11th Cir. 2020)).

**III.   Discussion**

Plaintiffs, American Federation of Government Employees Local 501 and Council of Prison Locals, CPL 33, as representatives of a putative class, move for an order enjoining Defendants

> from implementing their Employee Vaccine Mandate, issued pursuant to Executive Order No. 14043 . . . , 86 Fed. Reg. 50989, "Requiring Coronavirus Disease 2019 Vaccination for federal employees," based upon the following substantive legal reasons: (a) A violation of the Fourteenth Amendment to the United States Constitution, pertaining to privacy rights of bodily integrity, as enforced through 42 U.S.C. Section 1983; (b) A violation of the Privacy Act of 1974, 5 U.S.C. Section 552a(e); (c) A violation of the Administrative Procedures Act, 5 U.S.C. Section 553, et seq., and (d) A

> violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. Section 1983.

(Mot. at 2.)

Defendants initially argue that Plaintiffs clams fail on the following threshold grounds: (1) Plaintiffs lack standing and their claims are unripe, (Resp. at 6-7); (2) federal district court jurisdiction is precluded under the Federal Service Labor-Management Relations Statute ("FSL-MRS") and the Civil Service Reform Act ("CSRA"), (id. at 8-9); (3) the Court lacks jurisdiction to enjoin the President, (id. at 10-11); and (4) Plaintiffs have failed to state a claim under the APA, (id. at 11-12). Defendants further argue that even if these threshold issues did not bar Plaintiffs' claims, they still would not be entitled to injunctive relief because: (1) they failed to show irreparable harm, (id. at 12-13); (2) they are unlikely to succeed on any of their claims, (id. at 13-18); and (3) the public interest weighs heavily against injunctive relief, (id. at 18-19). Finally, Defendants argue that, should the Court disagree with them, any injunctive relief should be limited "to any specific employees that Plaintiffs identify as refusing to comply with a vaccination requirement (which they have not done)." (Id. at 20.) Because the Court finds that Plaintiffs lack standing, the Court will confine its analysis to that issue.

Defendants argue that Plaintiffs lack standing because they (1) do not allege harm to themselves and (2) failed to establish associational standing to assert the rights of their members. (Resp. at 6 (citing Ga. Republican Party v. Secs. & Exchange Comm'n, 888 F.3d 1198, 1203 (11th Cir. 2018)).) As to associational standing, Defendants argue that Plaintiffs have failed to include "'specific allegations' regarding 'at least one identified

11

member' who has standing to sue in their own right." (Id. (citing Ga. Republican Party, 888 F.3d at 1203). Defendants further argue that even if they had done so, "it still would be entirely speculative whether that individual has suffered or will suffer" the alleged harm—i.e., the "loss of federal employment." (Resp. at 6 (quoting Mot. at 10).) They argue that the potential injury depends "upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (Id. at 6-7 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)).)

> For example, any eligible employee may seek an exception to the vaccination requirement based on a medical condition or religious objection. Whether and what discipline could be imposed if an employee does not receive an exception is also unknown; the employee may decide in the end to be vaccinated; and termination from employment is also not a foregone conclusion. See December Announcement. Especially without specific allegations regarding the circumstances of any federal employee, these organizational Plaintiffs' fears of "hypothetical further" harm to unnamed individuals are, by definition, not "certainly impending" as required by Article III.

(Id. at 7 (quoting Clapper v. Amnesty Int'l, USA, 568 U.S. 398, 416 (2013)).) For similar reasons, Defendants argue that Plaintiffs' claims are unripe because "potential injuries based on 'hypothetical predictions of the outcomes of . . . exemption requests' are 'insufficient to 'render an issue ripe for review.'" (Id. (quoting Church v. Biden, No. 21-2815, 2021 WL 5179215, at *9 (D.D.C. Nov. 8, 2021), and citing Faculty Senate of Fla. Int'l Univ. v. Winn, 616 F.3d 1206, 1209 n.8 (11th Cir. 2010); United States v. Rivera, 613 F.3d 1046, 1050 (11th Cir. 2010)).)

12

Plaintiffs argue that they "jointly represent 33,000 constituent bargaining unit members, federal employees, who will be substantially affected by the Employee Mandate." (Reply at 4 (citing Am. Compl. ¶¶ 15-17).) They argue that

> a labor organization has standing to bring suit on behalf of its members, when:
>
> (a) Its members would otherwise have standing, to sue, in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.

(Id. at 5 (quoting United Food & Com. Workers Union v. Brown Grp., Inc., 517 U.S. 544, 553 (1996)).) Plaintiffs note that in American Federation of Government Employees, AFL CIO v. Trump, No. 18-cv-1475 (KBJ), 2018 U.S. Dist. LEXIS 243350 (D.D.C. Nov. 16, 2018), "there was no question" as to whether a national labor union had the ability to bring a lawsuit challenging certain Executive Orders on behalf of its members and to request injunctive relief. (Id.) Thus, they argue that "there can be no question that the labor organizations can properly bring claims or causes of action, on behalf of their members, where the members would be impacted by the challenged legal action." (Id.) Plaintiffs argue that they have associational standing to seek declaratory and injunctive relief on behalf of their members, but not monetary damages. (Id. at 5-6 (citing United Food, 517 U.S. at 554; Data Processing Serv. v. Camp, 397 U.S. 150 (1970); Nat'l Motor Freight Ass'n v. United States, 372 U.S. 246 (1963)).)

"Article III of the U.S. Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over 'Cases' and 'Controversies.'" L.M.P. ex

13

rel. E.P. v. Sch. Bd. of Broward Cnty., Fla., 879 F.3d 1274, 1281 (11th Cir. 2018) (quoting U.S. Const. art. III, § 2, and citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992)). "Accordingly, subject matter jurisdiction requires a justiciable case or controversy within the meaning of Article III." Id. (citing Allen v. Wright, 468 U.S. 737, 750-51) (1984)). "Standing constitutes one component of justiciability." Id. (citing Lujan, 504 U.S. at 560-61). "Whether a plaintiff has standing presents a 'threshold question in every federal case, determining the power of the court to entertain the suit.'" Id. at 1280-81 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P 12(h)(3); see also Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) ("[A] district court or appellate court may dismiss a case at any time for lack of subject matter jurisdiction[.]") (citing Ins. Corp. v. Compagnie des Bauxites, 456 U.S. 694, 704 (1982)).

"To establish standing, a plaintiff seeking to invoke [federal court] jurisdiction bears the burden of demonstrating: (1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." Id. (citing Lujan, 504 U.S. at 560-61). "In order to satisfy the first prong, the injury in fact requirement, 'a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.''" Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, 504 U.S. at 560)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly

impending." Lujan, 504 U.S. at 564 n.2 (internal quotation marks and citation omitted). Consequently, "'[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)). The Supreme Court has "been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." Whitmore, 495 U.S. at 1150. Thus, "[a] prospective injury that is contingent on the choices of a third party is less likely to establish standing." Ga. Republican Party, 888 F.3d at 1202 (citing Whitmore, 495 U.S. at 1150; Summers v. Earth Island Inst., 555 U.S. 488, 494 (2009)).

"It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing." Doe v. Stincer, 175 F.3d 879, 882 (11th Cir. 1999).

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[23]

Id. (quoting Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)). "To establish standing under this theory, an organization must 'make specific allegations

---

[23] The first two prongs "are Article III requirements which must always be satisfied to establish standing, but the third prong is only a prudential requirement, which may be eliminated by Congress." Doe, 175 F.3d at 882 (citing United Food & Com. Workers Union v. Brown Grp., Inc., 517 U.S. 544, 555-58 (1996)).

15

establishing that at least one identified member ha[s] suffered or [will] suffer harm.'" Ga. Republican Party, 888 F.3d at 1203 (quoting Summers, 555 U.S. at 498).

"The party invoking federal jurisdiction bears the burden of establishing" standing. Lujan, 504 U.S. at 561.

Here, the Amended Complaint wholly fails to identify any member of Defendants' unions, much less one that has suffered or will suffer harm. Consequently, Plaintiffs failed to establish associational standing. See Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1249 (11th Cir. 2020) (finding that the Democratic National Committee lacked associational standing to challenge a law that governs the order in which candidates appear on the ballot in Florida's general elections because "it failed to identify any of its members, much less one who will be injured by the ballot statute"); Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC, __ F. Supp. 3d __, 2021 WL 313626, at *2, 4 (S.D. Ga. Jan. 29, 2021) (finding that the organizational plaintiffs lacked associational standing where the amended complaint only identified one member and she did not have standing to sue in her own right); People First Ala. v. Merrill, 491 F. Supp. 3d 1076, 1134 (N.D. Ala. 2020) (finding that organizational plaintiff lacked associational standing where it failed to show that any of its members were harmed by Alabama's election laws).

Furthermore, the Amended Complaint fails to allege an injury in fact—that is, one that is "actual or imminent," Lujan, 504 U.S. at 560, or one that is "certainly impending," id. at 564 n.2 (internal quotation marks and citation omitted). If anything, the Amended Complaint alleges "possible future injury[,]" which is "not sufficient." Clapper, 568 U.S. at 409 (quoting Whitmore, 495 U.S. at 158). To begin with, as alleged, it is entirely

16

speculative as to whether any of Plaintiffs' members would be disciplined for failure to become vaccinated because, for example, they may choose to become vaccinated or receive an exemption. See Church, 2021 WL 5179215, at *8 n.22 (finding that alleged harm from a "forced" vaccination was "speculative because it is possible that [the plaintiffs'] exemption requests will be granted, and they will not be required to receive a vaccine"). Moreover, even if an employee refuses to become vaccinated, any adverse employment action would be subject to the discretion of an independent decisionmaker. For example, agencies are "authorized" (but not "required") to begin the disciplinary process for employees who refuse to comply with the vaccine mandate on November 9, 2021. (Am. Compl. ¶ 35.) Continued non-compliance during a suspension "can be" (but not "must be") followed by a "removal proposal" (but not "removal"), and in any event, unique operational needs of an agency and the circumstances affecting a particular employee "may warrant departure from this guidance." (Id. ¶ 37.) If a federal employee does not comply with the requirement to become fully vaccinated and has not been provided with an exemption, an agency "may" (but not "must") pursue disciplinary action. (Id. ¶ 41.) And if a new hire does not become fully vaccinated before reporting for their first day, an agency "may" (but not "must") take a personnel action, including rescinding the job offer. (Id. ¶ 43). The Court finds that the alleged prospective injury is too uncertain to establish an injury in fact. See Ga. Republican Party, 888 F.3d at 1202 ("A prospective injury that is contingent on the choices of a third party is less likely to establish standing.") (citing Whitmore, 495 U.S. at 1150; Summers, 555 U.S. at 494).

Because the Court finds that Plaintiffs lack associational standing and have failed to allege an injury in fact, the Court lacks subject matter jurisdiction and may not address the merits of the case, <u>Sierra v. City of Hallandale Beach, Fla.</u>, 996 F.3d 1110, 1115 (11th Cir. 2021); therefore, the Court must dismiss the case without prejudice, <u>Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.</u>, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.") (citing <u>Crotwell v. Hockman-Lewis Ltd.</u>, 734 F.2d 767, 769 (11th Cir. 1984)).[24]

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction;

2. All pending motions are **DENIED AS MOOT**; and

3. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 22nd day of December, 2021.

*[signature: Joan A. Lenard]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

---

[24] Because the Court finds that dismissal for lack of standing is warranted, it need not address the other threshold issues that Defendants raise.